[L. A. No. 3141.   Department One.—May 17, 1913.]

HUNTINGTON PARK IMPROVEMENT COMPANY, Appellant, v. PARK LAND COMPANY, Respondent.

APPEAL UNDER SECTION 941B OF CODE OF CIVIL PROCEDURE—NOTICE OF ENTRY—TIME OF APPEAL.—Under section 941b of the Code of Civil Procedure, actual service of a written notice of the entry of a judgment, order or decree is essential to start in motion the sixty-day period allowed by that section within which to appeal therefrom.

ID.—NECESSITY OF NOTICE OF ENTRY—ACTUAL KNOWLEDGE OF ENTRY—RECITAL OF WAIVER OF NOTICE IN ORDER APPEALED FROM.—The necessity of giving notice of the entry, for the purpose of starting the running of the sixty-day period for appeal, is not dispensed with, either by the actual knowledge of the party appealing of the entry, or by a recital in the order appealed from that a notice of the entry had been waived, or by a previous waiver of such notice.

CANCELLATION OF DEED—ESCROW—DELIVERY CONTRARY TO INSTRUCTIONS—APPROVAL BY AGENT OF GRANTOR.—In an action for the cancellation of a deed executed by the plaintiff to the defendant, on the alleged ground that a depositary with whom it had been left in escrow had delivered it without first securing compliance with certain conditions precedent embodied in the escrow instructions, requiring the execution of a written guaranty by a third person to repay the preferred stockholders of the plaintiff the amount of their investment in said stock, and the securing of such guaranty by the assignment of specified property, it is held, upon a review of the evidence, that the approval by the authorized agent of the plaintiff of the guaranties and assignment actually executed in performance of the escrow conditions, and which approval was inserted in the written instructions signed by such agent, formed a part of the instructions, and was conclusive upon the plaintiff as authority for the depositary to deliver the deed.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

Fred N. Arnoldy, and Walter L. Bowers, for Appellant

Gibson, Trask, Dunn & Crutcher, Edward E. Bacon, and W. H. Jamison, for Respondent.

SHAW, J.—Plaintiff appeals from the judgment and also from an order denying its motion for a new trial.

The defendant objects to the consideration of the appeal from the order on the ground that the appeal was taken too late. The order denying a new trial was made on August 29, 1911. The notice of appeal was filed with the clerk sixty-four days thereafter, to wit: on November 1, 1911. This was too late under sections 939 and 940 of the Code of Civil Procedure. But it was not too late under section 941b of the Code of Civil Procedure, if it was filed within sixty days after notice of the entry of the order was served on the attorneys for the plaintiff. Where the respondent makes this objection or moves to dismiss the appeal for this cause and the notice of such entry and proof of service thereof is not set forth in the transcript on appeal, it is incumbent on him to make proof of the facts necessary to support his claim. (*Foss* v. *Johnstone,* 158 Cal. 119, 123, [110 Pac. 294].) No such proof is offered and none is in the transcript. The respondent bases the objection upon a recital in the order appealed from. The entire order is as follows: "Motion for new trial is heard and same is denied. Notice is waived." Whether this means that notice of the making of the order was waived, or that notice of the *entry* thereof was waived, is, at best, uncertain. But conceding that it refers to the entry, which, of course, had not then been made, we are, nevertheless, of the opinion that it is not sufficient to start in motion the period of sixty days mentioned in section 941b. It provides that the notice of appeal may be filed at any time after the rendition of the order, that it "must be filed within sixty days after notice of the entry of said judgment, order or decree *has been served*

*upon the attorneys of record* appearing in said cause," but in no event later than six months after the rendition.   The actual service of this notice is thus made the essential act to mark the beginning of the sixty-day period.   When we consider the context it is obvious that this means a notice in writing.   Actual knowledge is immaterial.   It is the service of the written notice that is required.   We are unwilling to sanction any attempt to substitute a waiver entered of record by the clerk for the service explicitly required by the statute. It would inject uncertainty into the proceedings and be the cause of misunderstandings and frequent motions to dismiss appeals.   These have been too frequent in the past in respect to the time of the actual entry of the judgment, which, under the old method of appeal, was held a condition precedent to the right of appeal.   It was, we think, the object of the provision above quoted to prevent similar evils under the new method provided in that section.   We hold that the recital in question was not the equivalent of the service of notice required.   The objection of the defendant is overruled.

The deed in question was deposited in escrow with the Los Angeles Abstract and Trust Company, to be delivered to the grantee only upon compliance with certain conditions stated in written instructions accompanying the deed.   One of these conditions, as first expressed in the instructions, was that C. B. Guthrie Company, a corporation, should execute a written guaranty to repay to the holders of the issued preferred stock of the plaintiff corporation the amount of their investment in said stock, the performance of said guaranty to be secured by an assignment of the beneficial interest of Guthrie Company in certain property described as Trust No. T-2 of the Los Angeles Abstract and Trust Company.   The plaintiff alleged and contends that the deed was wrongfully delivered without a compliance with this condition, and it is upon this contention that it bases its claim of right to have the deed canceled, or, if that cannot be done, to recover the value of its interest in the land described in the deed.   The finding of the court below was that there was a compliance with this condition, that the security offered was approved by the plaintiff before delivery, and that the deed was not delivered before performance of the conditions, or without the knowl-

edge and consent of the plaintiff. It is urged that these findings are contrary to the evidence.

In explanation of the case, it is necessary to state the facts more fully. At and before the time of this transaction, a suit was pending wherein Park Land Company was plaintiff and the present plaintiff was defendant, in which the Park Company sought to quiet its title to the land in question. The Park Company had given the Guthrie Company an option to purchase the land at the price of fifty-seven thousand dollars. The Guthrie Company had made a resale of the land at a higher price to a syndicate headed by one Bundy. In order to carry out this resale it was necessary to obtain this quitclaim deed from the present plaintiff and have said pending action dismissed. The Guthrie Company and the plaintiff company agreed upon terms of settlement, and it was arranged that the deed should be put in escrow for delivery upon compliance therewith. Preparatory thereto the board of directors adopted a resolution authorizing the same. This resolution declared that ''in consideration of the guaranty of the C. B. Guthrie Company to make good any deficit that may exist between the resources and liabilities of the Huntington Park Improvement Company—any such deficit to include the repayment in full to holders of preferred stock with interest thereon at the prescribed rate from June 1, 1909, said guarantee to be secured by an assignment of declaration of trust issued by the Los Angeles Abstract and Trust Company (known by their number as T-2) that the president and secretary of this corporation be and the same are authorized to execute and deliver'' the deed in question, together with assignments of certain contracts for sales of lots held by plaintiff company as collateral, and to join in a dismissal of said pending action. It further declared that ''John S. Gortner be, and the same is, hereby authorized to sign any and all necessary escrow instructions relative to the delivery of these papers''; and that Gortner and Percy W. Ross were delegated to ascertain the best and safest method of handling the business details in connection therewith. Ross was president and Gortner secretary of said plaintiff company. The negotiations were all conducted by the Guthrie Company, on the one hand, and Ross and Gortner, on the other.

The escrow instructions accompanying the deed, were signed by Gortner for the plaintiff company. As first signed and deposited, the several conditions were numbered consecutively from 1 to 7. The specifications as to the guaranty was divided into two parts, one relating to the creditors, the other to the preferred stockholders, and they were numbered 1 and 2, respectively. No. 3 specified that the assignment as security should run to the Title Insurance and Trust Company. Thereupon, the guaranties, each being a separate document, and the assignment of trust T-2 were drawn under Gortner's directions, signed by the Guthrie Company and deposited with the escrow company. Underneath these instructions and on the same paper, Gortner then wrote and signed further instructions requiring additional conditions of delivery. The additional instructions contained the following statement: "All papers handed you by C. B. Guthrie & Co. are hereby approved" and a further direction to the depositary to deliver all the papers deposited for the use of plaintiff to one Simpson, trust officer of the Title Insurance and Trust Company. Thereupon the transaction was closed, the deed in question was recorded, the several documents were delivered to the proper parties as directed, payments of money were made as the agreement provided, and the pending action was dismissed.

It is obvious from these facts, that there can be no effectual cancellation of the deed or rescission of the contract in this action. The deed was made for the benefit of the Guthrie Company and the Bundy syndicate. It was admitted on the trial that the Guthrie Company had transferred its title to the lots to said syndicate. Neither the Guthrie Company nor any member of the syndicate is a party to the action. The court, however, made no findings as to the interest of the Guthrie Company, or of the transfer thereof to the Bundy syndicate. It based its judgment refusing cancellation of the deed solely on the findings that the papers were approved by the plaintiff and that the escrow instructions were complied with before delivery of the deed. So far as appears from the findings, the Park Land Company still remains the owner of the lots and of the interest conveyed to it by said deed. Hence, we cannot affirm the judgment on the ground that the

cancellation would be ineffectual, or on the ground that the interested persons were not parties to the action.

An examination of the two guaranties and the assignment shows that the guaranty for the benefit of the preferred stockholders was not, on the face of the three papers, secured by the assignment. The assignment was absolute and unconditional. It did not state the purpose for which it was made, nor that it was given as security. The guaranty for creditors expressed an undertaking by the Guthrie Company to pay "all and several the said *just debts and obligations of, and all claims against,*" the plaintiff, so far as they were not paid from its assets, and declared that "as security" for the performance of the undertaking, it had executed the aforesaid assignment, and it further provided that "upon full payment and discharge of all of *said debts and obligations of and all claims against*" the plaintiff, the said assignment should become null and void and the property covered thereby should be reassigned to the Guthrie Company. If this guaranty stood alone, it might reasonably be argued that its broad language embracing as it does all obligations of and claims against the company remaining after its assets were exhausted toward payment thereof, would include the claims of the preferred stockholders to be reimbursed their several investments in such stock. There is, however, no evidence as to the nature or extent of the preference due them. (See Civ. Code, secs. 323 and 290, subd. 6.) Hence we cannot say that the company was under obligation to reimburse them. And this argument completely fails when we consider the terms of the guaranty for the preferred stockholders. It names the several stockholders, states the number and par value of their respective shares, recites that no dividends have been paid thereon and that "it is doubtful whether or not the assets of said company will be sufficient, after the payment of its *just debts and obligations and the claims against it,* to pay the accumulated dividends" thereon, and then proceeds to agree that the Guthrie Company "will, within six months after all *just debts and obligations of and claims against* the said Huntington Park Improvement Company shall have been paid, and upon indorsement and delivery by them of their respective shares of stock aforesaid, *pay to them*

*therefor* the full par value of said stock'' with interest, less any dividends that may have been paid thereon.

This makes it entirely clear that the "just debts and obligations of, and all claims against," the Huntington Park Improvement Company which were covered by the guaranty to creditors, were something entirely distinct and different from the matter covered by the so-called guaranty to preferred stockholders. The latter was, in effect, merely an agreement to buy their stock at par and interest, after the debts, obligations, and claims mentioned in the guaranty to creditors were fully paid. If, therefore, the assignment was to be null and void after payment of these debts, obligations, and claims, it could not thereafter be effective, either to secure reimbursement to the preferred stockholders, or to secure performance of the agreement to buy their stock at par. It is scarcely necessary to add that the first-named guaranty could not be construed broadly enough to include the reimbursement of the preferred stockholders to the amount of their investments as among the "obligations of" or "claims against" the company, since, if this were so, the agreement in the second guaranty to buy their stock at par, after they had been fully reimbursed and after the assets were exhausted, would be wholly without consideration and beyond the scope of the escrow instructions.

We think, however, that, so far as this defendant is concerned, the approval of the guaranties and assignment inserted in the escrow instructions signed by Gortner for the plaintiff, must be held to be a part of the instructions and conclusive upon the plaintiff as authority for the delivery of the deed. He was authorized to "sign any and all necessary escrow instructions relative to the delivery" of the deed and other papers. His signature was a sufficient authentication of the instructions, at least with respect to all concerned who should act upon them without notice of any mistake or lack of authority on his part. The Park Land Company accepted the deed and joined in dismissing its pending action upon the faith of this approval. The depositary was acting under these instructions at the instance of Gortner for the plaintiff, and not under the direction of, or as agent for, the Park Land Company. The court found, on sufficient evidence, that the Guthrie Company was not acting as agent for the Park Land

Company in the transaction. The latter took no part in the transaction, except to authorize said dismissal, and none of its officers was present or had any knowledge of the escrow instructions or of the conditions of delivery of the deed. No notice of any mistake or want of authority can be imputed to it. The finding that the statement in the instructions that the guaranties and assignment were approved was made by the Huntington Park Improvement Company, is, therefore, sustained by the evidence. This finding supports the judgment refusing cancellation of the deed.

The judgment denying recovery of any sum as the value of the interest of plaintiff in the property described in the deed, is also a necessary consequence of the finding that the conditions of delivery as made were approved by the plaintiff company. It is unnecessary to consider the sufficiency of the evidence to sustain the finding that the plaintiff's interest in the land was valueless. None of the alleged errors of law affected the findings which we have considered as decisive of the case. We need not discuss them. The conclusion of law that the claim for this recovery was barred by the two years' limitation (Code Civ. Proc., sec. 339, subd. 1), and the judgment of like effect, are not supported by any evidence. The cause of action accrued, if at all, on June 25, 1909. The action was begun on January 5, 1911, less than nineteen months thereafter.

The judgment and order are affirmed.

Angellotti, J., and Sloss, J., concurred.