[L. A. No. 27012. In Bank. Feb. 26, 1963.]

PIGEON POINT RANCH, INC., Plaintiff and Appellant, v. EDWARD S. PEROT et al., Defendants and Respondents.

Schauer, Ryon & McIntyre and Robert W. McIntyre for Plaintiff and Appellant.

Schramm, Raddue & Seed, Edward W. Schramm and Dale E. Hanst for Defendants and Respondents.

GIBSON, C. J.—Plaintiff corporation is seeking to recover corporate funds allegedly misused by its officers. Defendant Perot was the president and a director of the corporation; defendant Duncan was its secretary and treasurer. The complaint prays for judgment against Perot on the first three counts in the amounts of $1,437.14, $868.65 and $1,000. The fourth count seeks recovery from Perot and Duncan in the amount of $1,250. General demurrers were sustained with leave to amend as to the first, second and third causes of action, and overruled as to the fourth. Plaintiff filed a written declination to amend, and the court granted defendants' motion to dismiss the first three counts. A judgment of dismissal as to those counts was then entered.

Plaintiff appealed to the District Court of Appeal, and defendants moved to dismiss the appeal on the ground that the judgment was not appealable. They argued that the judgment left the fourth count of the complaint still pending in the superior court and that for this reason it did not dispose of the entire case and was not a "final judgment" within the meaning of section 963 of the Code of Civil Procedure, which permits an appeal from such a judgment. The motion was denied without a written opinion, and a petition for hearing in the Supreme Court based upon the same ground was also denied. The District Court of Appeal then in a written opinion held that the judgment was appealable, considered the merits, and reversed the judgment. ((Cal. App.) 23 Cal. Rptr. 667.) This court granted a hearing.

Defendants now repeat the identical contention that they made in support of their motion to dismiss the appeal. ■■■ A number of decisions have held that when a motion to dismiss an appeal is denied by an appellate court prior to consideration of the merits of the appeal, the decision, after expiration of time for rehearing and for review by a higher court, constitutes a final determination on the question of appealability. (*George* v. *Bekins Van & Storage Co.*, 33 Cal. 2d 834, 850-851 [205 P.2d 1037]; *Easton* v. *Ash*, 18 Cal.2d 530, 539 [116 P.2d 433]; *Tyrrell* v. *Baldwin*, 78 Cal. 470, 471-472 [21 P. 116]; *White* v. *Sweeney*, 138 Cal.App.2d 199,

202 [291 P.2d 77]; *Cowen* v. *Cowen,* 100 Cal.App.2d 366, 371 [223 P.2d 666]; *Hartfield* v. *Alderete,* 26 Cal.App. 604, 605 [147 P. 991]; *Edwards* v. *Brockway,* 16 Cal.App. 626, 631 [117 P. 787]; see *People* v. *Randazzo,* 48 Cal.2d 484, 488 [310 P.2d 413].) The opinions in two of the cases, *Randazzo* and *Hartfield,* refer to the rule as an application of the doctrine of the law of the case, and, although the other decisions do not discuss the matter, it is clear the rule is based on that doctrine rather than on res judicata. Accordingly, it is subject to the various qualifications which have been made with respect to law of the case, such as the requirements that the point of law involved must have been necessary to the prior decision, that the matter must have been actually presented and determined by the court, and that application of the doctrine will not result in an unjust decision. (*DiGenova* v. *State Board of Education,* 57 Cal.2d 167, 178-180 [18 Cal.Rptr. 369, 367 P.2d 865]; *Vangel* v. *Vangel,* 45 Cal.2d 804, 809-810 [291 P.2d 25, 55 A.L.R.2d 1385]; *Tomaier* v. *Tomaier,* 23 Cal.2d 754, 757 [146 P.2d 905].)

▮ Defendants, relying upon *Bettencourt* v. *Bank of Italy,* 216 Cal. 174, 180 [13 P.2d 659], assert that the doctrine is not applicable here because the denial of their motion by the District Court of Appeal was without written opinion, because the decision was rendered before transmittal of the record to that court, and because the question of appealability goes to the jurisdiction of the court. Although that case lends support to their position, it has not been followed in any of the decisions relating to this question. Moreover, one of the grounds upon which the opinion was based, i.e., the existence of a jurisdictional issue, was directly rejected in *Gore* v. *Bingaman,* 20 Cal.2d 118, 121 [124 P.2d 17], where we held that law of the case would apply even though it was contended that absence of jurisdiction rendered the decision on the prior appeal a nullity.

▮ The other reasons urged by defendants for refusing to apply the doctrine are, in effect, a contention that the decision of the District Court of Appeal on the motion to dismiss should be treated as merely interlocutory in view of the circumstances under which it was made. The court, however, was presented with only one question, namely, appealability of the judgment, and, in the interests of orderly administration of justice, the denial of the motion, made without qualification, should be interpreted as a final deter-

mination. The court, if it had so desired, could have granted leave to renew the motion (see *Tyrrell* v. *Baldwin, supra,* 78 Cal. 470, 471-472) or declared that the denial was without prejudice. The absence of such a qualification would ordinarily lead the parties to believe that none was intended, and they should be entitled to rely upon the decision.

■ The fact that, as noted above, the doctrine of law of the case will not be applied so as to do an injustice will be ample protection to the parties if any unfairness would result. The application of the doctrine here will not result in injustice or unfairness but, to the contrary, will enable us to promptly dispose of the only issues involved on the merits, i.e., whether the first three counts of the complaint state causes of action. *Bettencourt* v. *Bank of Italy, supra,* 216 Cal. 174, is overruled insofar as it is inconsistent with these views.

■ The first cause of action alleges as follows: Perot, on behalf of himself and others whom he represented, agreed to sell all of their stock in plaintiff corporation to one Ward, who was acting for undisclosed principals, and to discharge all corporate obligations to the Perot Shasta Ranch and Mr. and Mrs. Perot. The holder of the remaining shares also participated in the contract and agreed to sell his shares to Ward, with the result that Ward was to acquire all the corporate stock. The agreement was not signed by the corporation. In exchange Perot was to receive from Ward $237,500, together with two lots in Marin County owned by the corporation which were to be transferred to Perot subject to present encumbrances. By oral agreement as well as by the terms of the written contract, Perot was to receive $1,500, in addition to the $237,500, "for the express and sole purpose of paying attorneys' fees owed by plaintiff corporation." The written agreement, incorporated in the complaint by reference, provided in paragraph 6(c) that "Perot does not agree to discharge the following corporate obligations: . . . Accrued attorneys' fees for services to the corporation. Perot assumes all said fees in excess of . . . $1,500." A later provision, by interlineation, states that Perot is to receive $1,500 attorneys' fees under 6(c)" as well as the $237,500. The transaction was consummated, and Ward paid Perot the sum of $237,500 together with the additional sum of $1,500. Perot, it is alleged, violated the terms of the agreement and his duties and obligations as an officer and director in that he did not use the sum of $1,500 to pay the attorneys' fees but

instead converted that amount to his own use and paid the fees in the sum of $1,437.14 out of corporate funds.

 The provisions of the contract, although not clear as to whether Perot was required to use the $1,500 to pay the fees, are subject to that interpretation and consistent with plaintiff's allegations. This cause of action thus is not one in which the pleading places a clearly erroneous construction upon an unambiguous contract provision, and under these circumstances it was proper, if not essential, for plaintiff to allege its own construction of the agreement. (*Silvers* v. *Grossman*, 183 Cal. 696, 700-702 [192 P. 534]; *McNee* v. *Harold Hensgen & Associates*, 178 Cal.App.2d 881, 885 [3 Cal.Rptr. 377]; *Totten* v. *Underwriters at Lloyd's London*, 176 Cal.App.2d 440, 445-446 [1 Cal.Rptr. 520].) Accordingly, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement.

 A director or officer of a corporation acts in a fiduciary capacity, and the law does not allow him to secure any personal advantage as against the corporation. (*Wulfjen* v. *Dolton*, 24 Cal.2d 878, 888 [151 P.2d 840]; *Bainbridge* v. *Stoner*, 16 Cal.2d 423, 427-428 [106 P.2d 423]; *Western States Life Ins. Co.* v. *Lockwood*, 166 Cal. 185, 190-191 [135 P. 496].) The first count states a cause of action under this rule. Although it is true, as defendants assert, that Perot used corporate funds to pay a corporate obligation, he did so knowing that under the contract he had personally agreed to discharge this obligation. When he failed to perform his promise and instead used corporate funds to pay the attorneys' fees he not only broke his agreement with Ward but he also acted against the interest of the corporation, to his own personal advantage, in failing to secure for it the benefit of the transaction by which he was to discharge its debt to the attorneys. Even if we assume, for purposes of this appeal, that the corporation was no more than an incidental beneficiary of the contract, Perot, as an officer and fiduciary, nevertheless owed it the duty of refraining from any conduct on his part which would prevent the corporation from securing the full benefit of the transaction.

 The second and third causes of action likewise allege sufficient facts to show that Perot acted in violation of his fiduciary duties to the corporation. The second cause of action alleges that, although the two lots in Marin County

were to be transferred under the contract subject to encumbrances, Perot used $868.65 of corporate funds to discharge improvement bonds that encumbered the lots and accepted the deed of the corporation to the lots without repaying that sum to plaintiff. The third cause of action alleges that Perot paid $1,000 to himself from corporate funds as payment of a debt owed to him by the corporation, that according to the contract the debt was to be satisfied by the consideration paid by Ward, and that Perot was thus paid twice for the same debt. Our discussion relating to the first count is equally applicable to these causes of action, because as to each it appears that Perot not only acted in a manner inconsistent with the contract but used his fiduciary position as a corporate officer to obtain a personal advantage to the detriment of the corporation.

The judgment is reversed.

Traynor, J., McComb, J., Peters, J., Tobriner, J., Peek, J., and White, J.,* concurred.

*Retired Justice of the Supreme Court sitting pro tempore under assignment by the Chairman of the Judicial Council.