[Civ. No. 10310.   Third Dist.   May 3, 1963.]

In re VICTORIA HARRISON, a Minor.   EVAN K. HARRISON, Plaintiff and Appellant, v. JULIE VANCE IVARSSON et al., Defendants and Respondents.

Chamberlain & Chamberlain, J. Frank Murphy and Paul H. Chamberlain for Plaintiff and Appellant.

Devlin, Diepenbrock, Wulff & Plant, Franklin H. Tuttle, James Diepenbrock and Bogle, Bogle & Gates for Defendants and Respondents.

SCHOTTKY, J.—Evan K. Harrison has appealed from an order of the Superior Court of Placer County sitting as a juvenile court dismissing a petition to declare Victoria Harrison, also known as Victoria Ivarsson, a minor, a ward of the juvenile court.

Victoria Ivarsson, the minor, is the daughter of Edward Harrison, deceased, and Julie Vance Ivarsson. After Edward Harrison's death Julie married Karl Ivarsson, her present husband, who then adopted the child. The Ivarssons reside in a small town in Switzerland. In the spring of 1960 appellant requested that Victoria visit him and her paternal grandmother. This request was granted on the condition that the child be returned to her home in Zermatt, Switzerland, in August.

On August 19, 1960, a petition was filed in the superior court by Evan K. Harrison, the stepgrandfather, to have

Victoria declared a ward of the court. The verified petition alleged that Victoria was a person within the provisions of subdivision (c) of section 700 of the Welfare and Institutions Code which provided that the jurisdiction of the juvenile court extends to any person under the age of 21 "[w]ho is destitute, or who is not provided with the necessities of life by his parents, and who has no other means of obtaining such necessities."

The verified petition asserted that the child is the beneficiary of a $2,000,000 trust which is under the supervision of the court of the State of Washington; that the child is not receiving an education in a school where the English language is taught or where any other subjects required to be taught by the public or private schools in the State of California or the State of Washington are part of the curriculum; that the child suffers from an untreated eye affliction; and that the village of Zermatt is an unhealthy place for the child to reside. Additional allegations were made concerning improper use of funds received by the minor's parents for the child's support.

After the petition was filed, the parents arrived in the United States. The child was placed in the custody of her mother and thereafter a stipulation was entered into. It provided that the guardian *ad litem* in Washington, certain doctors, and the probation officer were to work out an educational and health program for Victoria to follow. This stipulation was never carried into effect because the Washington court instructed Oles, the guardian, not to proceed in the matter.

In the interim the child and her parents returned to Switzerland. A hearing was scheduled in the California court on March 9, 1961. On that date the court was informed that contrary to an agreement neither the child nor the child's parents would be present but that their counsel would present their case. Thereafter, by agreement of court and counsel, the matter was set for hearing on March 14, 1961.

On March 7, 1961, prior to the March 14th hearing, the probation officer filed his report herein, and after reviewing the case and reciting his reasons, he recommended that the case be dismissed. On March 27, 1961, at a further hearing, the probation officer stated that while he felt the minor was in need of some type of psychiatric counseling, he felt that whatever was required could be best provided for by the court in the State of Washington of which she was a ward; that even though she was in need of treatment that would not, in his opinion, justify her being made a ward of the California

court; and that was his opinion aside from any practical problems involved by virtue of her parents being residents of Switzerland. He therefore recommended that the petition be dismissed. The court followed the recommendation of the probation officer and dismissed the petition. This appeal followed.

In our original decision in this matter filed on February 19, 1963, we held that the appeal had to be dismissed because the attempted appeal was from a nonappealable order. On February 26, 1963, the Supreme Court filed its opinion in *Pigeon Point Ranch, Inc.* v. *Perot,* 59 Cal.2d 227 [28 Cal.Rptr. 865, 379 P.2d 321], holding that denial of a motion to dismiss an appeal becomes the law of the case even in the presence of a question as to appealability of the judgment or order under attack. We granted a rehearing on our own motion because our original opinion may have been wrong in the light of the *Pigeon Point* case, *supra,* since we had previously denied a motion to dismiss the appeal.

In our prior opinion we stated that the order of the trial court dismissing the action, and which in effect held that the child, Victoria, should not be made a ward of the court, was amply supported by the evidence and the law. We adhere to that statement.

After the cause had been submitted the trial court determined that the facts did not warrant making the child a ward of the court. ■ To attack a determination of a juvenile court in a proceeding such as this the appellant must show that the court abused its discretion, and in the absence of such a showing the broad discretion of the juvenile court judge will not be disturbed. (*In re Hartman,* 93 Cal.App.2d 801 [210 P.2d 53].) ■ The facts presented to the juvenile court do not require a finding that Victoria is a child who is destitute or who is not provided with the necessities of life by her parents and who has no other means of obtaining such necessities. Victoria is the beneficiary of a $2,000,000 trust fund which is administered by the court of the State of Washington. The juvenile court could assume that the Washington court would see to it that Victoria was furnished with any necessities she required. ■ The fact that she is being educated in Swiss schools, and the further fact that she is not receiving the education required by the State of California or the State of Washington, would not warrant making her a ward of the court. The fact that a child is being educated in a foreign country like Switzerland, according to

its standards, is hardly grounds for declaring the child a ward of the court.

The allegation that the minor child had an eye affliction needing medical attention could hardly be deemed sufficient reason to invoke the jurisdiction of the court. This could be accomplished through the Washington guardianship proceedings because the Washington court can secure for the minor any medical attention needed. ■ The allegations that Zermatt, Switzerland, is ''an unsafe and unhealthy place,'' lacking in ''adequate health or educational facilities,'' and ''severely cold and subject to frequent violent storms'' are not allegations that the minor was not being provided with the necessities of life. In any event, the parents of the minor had the right to choose the place of residence for themselves and their minor child.

■ The argument that the child needed psychiatric care does not avail appellant either. The probation officer stated to the court that this fact would not justify making the child a ward of the court. This opinion could be used as the basis of the juvenile court's ruling. As stated by the juvenile court in its memorandum of decision:

''The importance of the role of the probation officer in juvenile court proceedings is spelled out by the Welfare and Institutions Code. He shall, on order of the court, in any matter involving the custody, status or welfare of a minor, make an investigation of the appropriate facts and circumstances and prepare and file with the court written reports and written recommendations in reference to such matters. The courts are authorized to receive and consider such reports in determining any such matter. (Welf. & Inst. Code, § 638.1.) The probation officer shall inquire into the antecedents, character, family history and environment of every person brought before the court. He shall inquire into the cause for which such person is brought before the juvenile court and shall make his report in writing to the judge thereof. (Welf. & Inst. Code, § 639.) The probation officer shall be present in court to represent the interests of each such person when his case is heard and shall furnish to the court such information and assistance as the court may require and shall make his report thereon at that time. (Welf. & Inst. Code, § 640.) ''

Considering the function of the probation officer in juvenile court proceedings, the juvenile court could rely on the probation officer's opinion in considering the disposition of the case.

From a review of the evidence presented, the juvenile court did not abuse its discretion in ordering the proceedings dismissed. The facts as presented justify the juvenile court's conclusion that the petition should be dismissed.

■ Appellant also contends that no hearing was held in the matter. The record discloses that he submitted documents to the court and apparently furnished the court with all the information he desired. It is true that no formal hearing was conducted and that the child and her mother were not before the court at the final hearing. But appellant at least impliedly acquiesced in the submission of the cause. This acquiescence also is shown by appellant's motion to vacate the submission. The purpose of this motion was to introduce into evidence some additional material for consideration by the juvenile court. No objection was made before the trial court as to the submission. Appellant may not now complain on this ground.

No other points require discussion.

The order is affirmed.

Pierce, P. J., and Friedman, J., concurred.